No. 25,201.

THERESA SNEHODA, *Appellant*, v. THE FIRST NATIONAL BANK IN WICHITA, *Appellee*.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Prayer for Relief—Pleader Entitled to Whatever Relief Evidence Shows Her Entitled to Irrespective of Prayer for Relief*. Rule applied that a litigant is entitled to whatever relief her cause of action pleaded and proved, or admitted or not denied, entitle her, whether such relief is included in the prayer of her petition or not; and an amendment to the prayer of her petition is not a prerequisite to such relief.

2. SAME—*Issues Which Are Res Judicata*. Rule applied that a lawsuit between litigants in their ordinary capacity adjudicates between them not only what they chose to litigate but everything incidental thereto which could be litigated under the facts which constitute the cause of action.

3. BANKS AND BANKING—*Deposit of Money to Be Transmitted Through Foreign Exchange to Poland—Right of Depositor to Change Order of Delivery*. The facts pertaining to a deposit of money in a bank to be

Snehoda v. National Bank.

transmitted and delivered through foreign exchange in Polish currency to a payee in Poland, where delivery was never made but frustrated by the original depositor and by the relatives of the payee, examined, and held, that the depositor had a right to cancel the order of delivery; and that the bank was liable for the exchange market value of the Polish currency at the time when it ascertained that delivery had not been made; and that the question as to when the bank ascertained the fact of nondelivery, and the question as to what was the exchange market value of Polish currency when the bank became liable therefor, were for the jury's consideration, and it was error to dispose of them by an instructed verdict.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 5, 1924. Reversed.

*John B. Bryant,* of Wichita, for the appellant.

*C. H. Brooks, Willard Brooks,* and *Howard T. Fleeson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action to recover $2,400 which she deposited with the defendant bank to be transferred and delivered to a person in Lemberg, Polish Austria, and which the bank failed to deliver.

The circumstances were these: In February, 1920, plaintiff made two deposits of $1,200 each in the defendant bank upon an understanding and agreement that the latter would so dispose of the money as to cause to be paid to plaintiff's niece, Marie Maksymowicz, the sum of 400,000 kronen, Polish money, at Lemberg, in Galicia, Austrian Poland. About the time of this transaction Polish kronen were worth 60 cents per hundred, viz.: $.60, 100 kronen; $2,400, 400,000 kronen. The bank set about the transfer of the money through its correspondent, the Irving National Bank of New York, which in turn ordered delivery of the money through its correspondent in Poland, the Wiener Bank Verein of Cracow, which institution had a branch in Lemberg. Affairs in and about Lemberg at that time were in a turmoil owing to hostilities between Poland and Russia, and communication by mail between Wichita and Lemberg took about two months. Meantime the exchange value of kronen declined. The plaintiff's niece to whom the money was to be delivered was not at the address given by plaintiff, so delivery could not be made. Relatives of the plaintiff and her niece still resided at that address, but the girl herself was in a hospital; and certain correspondence passed between plaintiff and these relatives,

the full nature of which was not disclosed, but following which plaintiff cabled to her niece, and wrote to her brother-in-law, the niece's father, not to take the money and *thanking him for the advice.* Following this, plaintiff called at the defendant bank in May, 1920, and accused its officials of cheating her, and demanded a return of the $2,400. The bank did not know at that time that plaintiff and her Polish relatives were thwarting delivery, but it did not positively refuse to return the money. It merely took the position that until it had a reasonable time to ascertain whether the 400,000 kronen had been delivered or not, it would neither admit or deny liability. Plaintiff repeated her visits to the bank and repeated her demands for repayment of $2,400. To pacify plaintiff until the bank could ascertain whether or not delivery had been made, the bank's assistant cashier, on July 22, 1920, wrote the following on the back of each of the receipts which it had given to plaintiff at the time it had received her $2,400 in February:

"EXHIBIT B.

"WICHITA, KANSAS, July 22, 1920.

"Referring to the within receipt for postal remittance for which purchaser paid $1,200.00, we hereby agree to allow interest on the sum of 4% interest from Feb. 14, 1920, to date of cancellation in case it is ascertained definitely that payment can not be made, and also to refund the $1,200.00 in full.

"FIRST NATIONAL BANK IN WICHITA,

"By Leland Scrogin, Assistant Cashier.

"N.B. Every effort is being made to trace and a report will be given you at the earliest possible moment."

[Exhibit "D" was similar, and pertained to the second sum of $1,200.00.]

In her petition, plaintiff, among other matters, alleged that defendant definitely ascertained on July 28, 1920, that delivery of the 400,000 kronen could not be made. She prayed judgment for $2,400, interest and costs.

Defendant's answer, after various denials and admissions, including an admission that it purchased 400,000 kronen, through its New York correspondent and the latter's correspondent in Poland, to discharge its obligation to plaintiff, alleged that the written acknowledgments of the assistant cashier dated July 22, 1920, were made without authority, and furthermore that they were not contracts but mere statements to be considered with the other circumstances of the case. It was further alleged:

"That it is the universal custom that such remittances in foreign exchange, if cancelled or refunded, are refunded at the current rate of exchange. That on said date of July 22, 1920, the value of Polish kronen in American money had gone down from sixty cents per hundred kronen to twenty-three cents per hundred kronen; that such was the definite agreement and understanding of the plaintiff and the said Leland Scrogin at the time said writings were executed; that the said writings, Exhibit 'B' and 'D' were executed on the mutual understanding between plaintiff and said Scrogin that their legal purport was in accordance with said custom; and that as a result of said facts the legal significance of the said writings is that the said repayment should be made by a reversion of the kronen into dollars at the current rate of exchange. By reason of the facts above set out the defendant prays the court that if it should be found responsible for Exhibits 'B' and 'D' it may have reformation of the two said writings in accordance with the mutual understanding of the plaintiff and said Scrogin above set out in order to insert in each writing words to the effect that payment of the Four Hundred Thousand kronen is to be in dollars at the current rate of exchange."

In the course of the trial, plaintiff asked leave to amend the prayer of her petition—

"That in the event the court finds the contract or contracts marked Exhibits 'B' and 'D' to be void and not binding on the defendant bank that the plaintiff be entitled to recover from the bank the value of the kronen at the time the bank should have delivered them to the plaintiff; they having had a reasonable time in which to make delivery; and that after demand had been made upon them by the plaintiff and the demand had not been complied with by the bank, we shall be entitled to recover the market value of the kronen based on kronen, the current day exchange at that time of the kronen."

The court ruled:

"I will refuse the request to amend. The court holds that Exhibits B and D dated Wichita, Kansas, July 22, 1920, were executed without consideration and they are stricken from the evidence in this case for the reason that at the time the said receipts or exhibits were executed there was no liability on the part of the First National Bank to Mrs. Snehoda to pay her any money, and that the agreement to forbear suit was without consideration, since nothing could have been recovered if suit had been instituted, and the court declines to pass upon the question of reformation of the two exhibits for the reason that the same were executed without consideration and reformation would be useless."

Thereupon the court sustained defendant's motion for an instructed verdict. The record proceeds:

"The court thereupon directs the jury to return a verdict for the defendant, the court at the same time stating that in directing said verdict he wishes it understood that his action is without prejudice to all or any rights which the plaintiff may have independently of this suit to recover, under any theory, for the value of the kronen purchased by the defendant in her behalf."

Judgment for defendant. Plaintiff appeals.

It will be noted that neither party to this action, nor the trial court itself, was very confident of the correctness of its position: plaintiff wanted to amend her prayer so as to recover the market value of the kronen, if she could not have judgment for $2,400; defendant pleaded that its liability was limited to the value of the kronen at the current rate of exchange; the trial court's view was that notwithstanding it had jurisdiction of the parties and subject-matter it could not entirely dispose of the controversy, so it gave defendant judgment in this action, without prejudice to plaintiff's right to bring some other sort of an action.

Touching the trial court's refusal to permit plaintiff to amend *her prayer,* the rule is that an amendment to a prayer of a petition is seldom an important matter and never an essential one to the correct administration of justice. In *Eagan v. Murray,* 102 Kan. 193, 195, 170 Pac. 389, it was said:

"So long as a petition states a good cause of action, the prayer for relief is not very important. The prayer merely voices the plaintiff's idea of what relief he is legally entitled to, or what redress will satisfy him. The court will grant him the relief to which his cause of action alleged and proved shows him to be entitled, and this relief may or may not conform in whole or in part to that prayed for by the plaintiff."

It follows that the proper measure of justice should have been dealt out to plaintiff—whatever that might be—regardless of the prayer of her petition, so long as it was within the scope of the facts alleged in her petition and either proved by the evidence or admitted or not denied by her adversary.

Passing next in logical order to the trial court's theory, that judgment against plaintiff would not bar another action between the same parties, arising out of the same transaction—"for the value of the kronen." It is a general rule of law, indeed an elementary one, that in a lawsuit between litigants in their ordinary capacity, so far as relates to a subsequent action on the same claim, not only is everything adjudicated between them which the parties may properly choose to litigate, but also everything incidental thereto which could have been litigated under the facts which gave rise to the cause of action. (*Hentig v. Redden,* 46 Kan. 231, 26 Pac. 701; *C. K. & W. Rld. Co. v. Comm'rs of Anderson Co.,* 47 Kan. 766, 29 Pac. 96; *Marshall v. Railroad Co.,* 96 Kan. 470, 152 Pac. 634; *Greenwood v. Greenwood,* 96 Kan. 591, 152 Pac. 657; *id.* 97 Kan. 380, 383, 155 Pac. 807; *Tatlow v. Bacon,* 101 Kan. 26, 29, 165 Pac. 835; 23 Cyc. 1295 *et seq.,* 15 R. C. L. 962 *et seq.*)

Let us next note the defendant's pleadings. The bank virtually conceded its liability for the value of the 400,000 'kronen at the current rate of exchange. There is no doubt that plaintiff gave her order to cancel the remittance, nor is it denied that she had power to do so. The relation of the plaintiff and the bank was that of principal and agent. (*Legniti v. Mechanics & Metals Nat. Bank*, 230 N. Y. 415, 16 A. L. R. 185, Syl. ¶ 3.) It is also clear that at some time or another the bank discovered that the plaintiff was trying to defeat delivery—by her insistent and repeated demands for cancellation and refund, and by her independent correspondence with her Polish relatives not to accept payment. Just when the bank learned that delivery had not been made, after plaintiff's demand for cancellation and delivery, was not shown. Plaintiff alleged that on July 28, 1920, the bank definitely ascertained that delivery of the kronen could not be made. We would not say that there was evidence to support that allegation. Neither do we discern from the record just when it was that the bank did learn that fact, nor when it learned that plaintiff had thwarted or attempted to thwart delivery. The time when the bank learned that delivery had not been made was an all-important issue of fact, requiring a jury's determination, which could not properly have been disposed of on an instructed verdict. After learning that delivery had not been made, the bank should then have cancelled the remittance and ordered the kronen disposed of at the then prevailing market price and should have delivered the proceeds to plaintiff, less necessary and reasonable expenses, if any, pertaining to such exchange. (*Safian v. Irving Nat. Bank*, 196 N. Y. Supp. 141.) The bank had a reasonable time to accomplish this.

(See also: *Nicoletti v. Bank of Los Banos* [Cal.], 214 Pac. 51, 27 A. L. R. 1479, and note, p. 1488 *et seq.*; *Scheibe v. Zaro*, 192 N. Y. Supp. 433; *Plischner v. Taylor*, 193 N. Y. Supp. 236; *Gravenhorst v. Zimmerman*, 236 N. Y. 22; *Vincenzo v. Richwood Banking & Trust Co.* [W. Va.], 117 S. E. 882; 33 Yale L. J. [Dec. 1923], 177, 184.)

This view renders it unnecessary to determine whether the recitals of Exhibits B and D should be considered as contracts, or whether they were void as such for want of consideration. At the time these recitals were written by the assistant cashier, the bank did not know that plaintiff had taken steps to prevent delivery, and had rendered delivery impossible. So the exhibits may be entirely disregarded.

In conclusion, it seems clear that the facts pleaded and proved or admitted established a cause of action in plaintiff's behalf. Her unfounded accusations that the bank was cheating her and her efforts with the aid of her Polish relatives to thwart delivery and to cancel and recall the remittance, did not subject her to a penalty of the loss of the whole $2,400. She is entitled to judgment for the value of the 400,000 kronen at the current rate of exchange, based upon their market value (a jury question) at the time the bank learned that delivery had not been made (a jury question), subject to any change in that rate of exchange which may have occurred within the reasonable time thereafter to which the bank was entitled to effect a disposition of the kronen and procure their exchange into American money (a jury question).

It follows that the judgment must be reversed; but it will not be necessary to go over the whole case again. (Civ. Code, § 307; R. S. 60-3004; *Scoby v. Bank,* 112 Kan. 135, 140, 211 Pac. 110.) The cause is remanded with instructions for further proceedings limited to the ascertainment of the jury questions of fact outlined above and for judgment for plaintiff in accordance therewith.